[Civ. No. 15140. First Dist., Div. Two. Jan. 30, 1953.]

CLARA E. HARTZELL et al., Respondents, v. FRANKLYN C. MYALL, Appellant.

Breed, Robinson & Stewart and Richard K. Dutton for Appellant.

Richards & Rankin for Respondents.

JONES, J. pro tem.—This appeal is from a judgment entered upon the verdict of a jury awarding respondents both punitive and compensatory damages. The action involves an allegedly fraudulent sale of a furnished boarding house located at 608 27th Street in the city of Oakland. The appeal is also from the order denying appellant's motion for a new trial, but since such an order is nonappealable, the purported appeal therefrom should be dismissed. (Code Civ. Proc., § 963; 2 Cal.Jur. § 34, p. 173; *Roberts* v. *Brae,* 5 Cal. 2d 356 [54 P.2d 698].)

Respondents are husband and wife. Mrs. Hartzell was formerly Clara E. Noble and under that name, and before her marriage, she purchased the property involved in the sale. The purchase was made partly by cash and partly by a note secured by a trust deed on the property. There remained unpaid on this note the sum of $5,430.87 at the time of the transaction which is the basis of this litigation. The controversy centers about the value of Mrs. Hartzell's equity in the property, and the appeal hinges on whether the value of this equity was pleaded and proven in such manner and to the extent that the jury could apply the measure of damages prescribed by section 3343 of the Civil Code. Appellant challenges the sufficiency of respondents' complaint to state a cause of action and charges that there is no evidence in the record of sufficient substantiality to sustain the verdict.

Upon an appeal every intendment is to be indulged in which tends to support the judgment (*Hinds* v. *Oriental Products Co., Inc.,* 195 Cal. 655, 661 [235 P. 438]) and every reasonable inference which tends to support a finding must be accepted. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P. 2d 689].) The evidence is to be construed most strongly in favor of the respondent and all conflicts resolved in support of the verdict. (*Patten & Davies Lbr. Co.* v. *McCon-*

*ville,* 219 Cal. 161, 164 [25 P.2d 429].) ██ And where appellant urges the insufficiency of the evidence to sustain the findings of the jury the rule is that, "Such contention *requires defendants to demonstrate* that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550].) (Emphasis added.) It is said in *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183], that: "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

Reviewing the record in the light of the rules applicable on an appeal it appears that the defendant, a real estate salesman, appeared at the premises of Mrs. Hartzell on the 8th day of June, 1949, and on his positive representation that he would secure $7,000 in cash for her for her equity in the property she signed a written authorization to him to sell the property for $17,000. Within a few days he secured an offer of $15,000 for the property executing a deposit receipt to the prospective purchaser for $100. This deposit receipt he submitted to Mrs. Hartzell on June 10, and on that date she endorsed her acceptance thereon in the following language:

"Accepted June 10, 1949. I agree to sell the property described on the reverse side hereof on the terms and conditions therein stated and agree to pay the agent named thereon as commission the sum of Seven Hundred Fifty Dollars ($750.00) or one-half the deposit in case same is forfeited by purchaser, provided the same shall not exceed the full amount of the commission. (Signed) Mrs. Clara E. Noble Hartzell."

That part of the reverse side of the deposit receipt material here reads:

"Deposit Receipt

"Oakland, California, June 10, 1949

"Received from Janet Helen Charleston the sum of One Hundred (ck) Dollars as a deposit on account of the purchase price of the following described property, situate in the City of Oakland, County of Alameda, State of California,

674

to-wit: 608 - 27th St for the purchase price of Fifteen Thousand Dollars ($15,000.00). The balance of the purchase price is to be paid within (word not decipherable) days from date hereof, as follows, to-wit: $1000 as Dn Payment Balance payable at $125.00 per mo. @ 6% int. Sold furnished *list to follow* Subject to Owners acceptance." (Emphasis added.)

On June 15 appellant reappeared at the Hartzell premises and submitted to her a list of the furnishings sold with the house, which, at his instigation, she signed, as she explained, in three places. Her testimony as to what occurred at the time is: "Q. And now, Mrs. Hartzell, at the time that Mr. Myall came into your house, how was he holding the group of papers? A. He held them all together. Q. Would you illustrate to the jury how he held them, just using those as dummies? A. He had these all together as this, and he had the furniture listing typed, which I looked and seen they were right close together. You couldn't see, you know; they were all the same size. And —— Q. You were sitting at the table, were you? A. When he first showed them to me, was in the dining room—in the kitchen; then we walked to the dining room and he laid them down at the table before me and I said, 'Here's the furniture listing.' And he remarked, what a time he had having them typed, and he said, 'Now this furniture list will authorize me to sell the furniture with the house.' And he said, 'Now one copy you will get in the mail; one will go to the buyer; and one to the title insurance company.' And so I figured that, not having—selling real estate—that they did have to be signed separate. So when he sat down at the table, he just put them like that, so you could just see the lines. Q. You are demonstrating that? A. That's right. Q. That he had lines to sign? A. That he had lines to sign. That was the way I seen just lines to sign. And I signed 'Clara E. Noble' and I signed 'Mrs. Clara E. Noble,' and as I signed 'Mrs. Clara E. Noble,' he says, 'Oh, no; don't sign it that way.' He said, 'Sign it like you did the first time.' Well, so I became confused and so he went like that. He said, 'Oh, no, that's all right; you will get this copy in the mail. This will be your copy.' So I signed the papers and there was no more said. Q. Now Mrs. Hartzell, after you signed the papers, were they given to you to read? A. No. He picked the papers up and took them. . . . Q. Did you sign it with a pen? A. Yes. Q. And do you know how many instruments you signed? A. No, I don't. Q. And

do you know what the instruments were that you signed? A. He said only that it was the furniture listing; he said nothing else.''

Appellant testified as to what occurred in her house at that time as follows: ''Q. . . . Now Mr. Myall, I show you a copy of the Seller's instructions, Plaintiffs' Exhibit 7—— A. Yes? Q. ——signed Clara E. Noble. A. That's correct. Q. Now the writing on that instruction is Mr. McCullough's handwriting, isn't that correct? A. That's correct. Q. And where was it written? A. At the title company. Q. By Mr. McCullough? A. That's correct. Q. And Mrs. Noble was not there, was she? A. That's correct. Q. So you had Mr. McCullough write out the escrow instructions; then you took them back to Mrs. Hartzell's house and had her sign it? A. That's right. Ninety per cent of the deals are done that way, Counsellor. Q. Now Mrs. Hartzell signed the deed at her house, didn't she? A. That's correct. Q. And Mr. McCullough acknowledged the deed, didn't he? A. That's correct. Q. But Mrs. Hartzell did not appear before Mr. McCullough, did she? A. That's correct. Q. You told Mr. McCullough that Mrs. Hartzell had signed the deed? A. I vouched for those signatures, yes. Q. You vouched for them with Mr. McCullough? A. That's correct.''

The next substantial information which Mrs. Hartzell received concerning the transaction came by way of a statement from the title company into whose possession appellant gave the deed and the Seller's instructions. This statement is:

''Clara E. Noble
608 - 27th St.,
Oakland, Calif.

June 17th, 1949 Escrow No. 422232

| | | |
|---|---|---|
| Deed Demand—to Charleston ............. | | $15,000.00 |
| Pro rata taxes ............................ | | 6.31 |
| Pro rata insurance ....................... | | 28.08 |
| First Loan assumed by purchaser .......... | $5,430.87 | |
| Second deed of trust from buyer ........... | 8,569.13 | |
| Revenue stamps ......................... | 11.00 | |
| Drawing papers and notary fee ............ | 10.00 | |
| Broker's Commission ..................... | 750.00 | |
| Check Herewith ......................... | 263.39 | |
| | $15,034.39 | $15,034.39 |

We enclose Note in the amount of $8569.13
dated June 15, 1949.''

The upshot of the transaction was that respondents received $1,000 in cash, less sales charges, instead of $7,000 as promised by appellant, with a second deed of trust to secure the $8,569.13 balance of the purchase price. The value of the property is given by the appellant. In response to questions by his own counsel, he testified: "Q. Mr. Myall, you just testified that you thought the market value of the property might be around $15,000? A. That's right. Q. Does it make any difference in computing what you think the market value is, whether or not it is an all cash sale or a note and deed of trust that is received? A. It wouldn't make any difference, no. Q. Then the market value would be $15,000 irrespective of whether it was cash or note and deed of trust? A. That's correct."

■ The argument is made that although Mrs. Hartzell received $1,000 in cash instead of $7,000 she sustained no loss. This argument is based on the premise that the note secured by the second deed of trust was worth its face value. The record discloses, however, that respondents were able to sell it for only $3,500 after much effort. The witness Austin, a person of 45 years' experience in dealing in second mortgages in West Oakland, and who was well acquainted with the Hartzell property, testified that the market value of this particular deed of trust was $3,750. Austin's testimony with respect to the value of this second deed of trust stands uncontradicted.

The deposit of $1,000 plus the value placed on the second deed of trust by Mr. Austin gave the Hartzells $4,750 for an equity, the value of which as fixed by appellant amounted to the difference between $15,000 and the first deed of trust of $5,430.87, or $9,569.13. Within the scope of these figures the jury was free to find the amount of damages sustained by respondents and the verdict of $2,560.70 cannot be said to be beyond the scope of the evidence. On the contrary, it is abundantly supported by appellant's own testimony.

■ It is provided in section 3294 of the Civil Code that, "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." In this case the deception practiced by the defendant in procuring the signature of Mrs. Hartzell to the seller's instructions and to the deed to her property affords a solid basis upon which a

proper inference of fraud and malice could be predicated by the jury. ▮ The reviewing court may not substitute an inference different from that arrived at by the jury if such inference is reasonable. (*Crawford* v. *Southern Pac. Co., supra,* 3 Cal.2d 427, 429.)

▮ Nor has appellant pointed to any factual or legal basis in support of his contention that $1,000 is excessive as exemplary damages, this sum being less than one-half of that given as the compensatory award. ▮ Upon the question of what is an adequate sum to award as a punishment and for an example in cases of fraud the jury has a wider discretion than in the case of compensatory damages. (8 Cal.Jur. 866; *Boyes* v. *Evans,* 14 Cal.App.2d 472, 480 [58 P.2d 922].)

▮ As the award of compensatory damages is also amply supported by substantial evidence, neither may it be disturbed on appeal on the ground that it is excessive. The facts disclosed by the record, and which we have summarized, fail to support appellant's contentions that the verdict with respect to either compensatory or punitive damages is contrary to the instructions given by the court, or against law, or that it is contrary to the evidence, and these contentions cannot, therefore, be sustained.

The attack upon the complaint is limited to its sufficiency to state a cause of action. ▮ A cause of action may be said to arise when there is a breach of duty by one person toward another which invades the latter's rights. ▮ It is the violation of an obligation to another to his injury (*Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636 [134 P.2d 242]) and is made up of the facts upon which plaintiff's right to sue is based and out of which defendant's duty has arisen taken in connection with the facts that constitute defendant's wrong. (*Hutchinson* v. *Ainsworth,* 73 Cal. 452 [15 P. 82, 2 Am.St.Rep. 823].) Appellant evidently has failed to distinguish between the remedy or relief which the law affords for the invasion of a right, and the cause of action or ground for the relief. ▮ Thus in an action for fraud and deceit a cause of action is stated when the facts constituting fraud are alleged and a resulting injury is pleaded. ▮ Damages constitute the relief which the law affords for the invasion of the right and the extent of the relief depends upon the proof, the relief being limited by the measure of the damage which the law prescribed. ▮ This measure need not be pleaded, nor is the plaintiff required to state in his pleading

the manner in which he computes the amount of the damages which he demands. (15 Am.Jur. 747.) These are matters which are to be regulated upon the trial in accordance with prescribed legal limitations. Since the complaint sets forth the facts going to make up the fraud and trickery, alleged to have been maliciously and designedly executed, and a resultant injury to respondents, it states a good cause of action for the recovery of both compensatory and punitive damages.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied February 28, 1953, and appellant's petition for a hearing by the Supreme Court was denied March 30, 1953. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.