[L. A. No. 24825. In Bank. Mar. 12, 1959.]

WILLIAM R. WARD et al., Respondents, v. MARSHALL W. TAGGART et al., Appellants.

738

James C. Blackstock and Felix H. McGinnis for Appellants.

Chandler P. Ward for Respondents.

TRAYNOR, J.—At plaintiff William R. Ward's request in February, 1955, LeRoy Thomsen, a real estate broker, undertook to look for properties that might be of interest to Ward for purchase. During a conversation about unrelated matters, defendant Marshall W. Taggart, a real estate broker, told Thomsen that as exclusive agent for Sunset Oil Company he had several acres of land in Los Angeles County for sale. Thomsen said that he had a client who might be interested in acquiring this property. When Thomsen mentioned to Taggart that another broker named Dawson had a "For Sale" sign on the property, Taggart replied that Sunset had taken the listing away from Dawson. With Ward's authorization Thomsen submitted an offer on his behalf to Taggart of $4,000 an acre. Taggart promised to take the offer to Sunset. Taggart later told Thomsen that Sunset had refused the offer and would not take less for the property than $5,000 an acre, one-half in cash. Thomsen conveyed this information to Ward, who directed Thomsen to make an offer on those terms. Thomsen did so in writing. At Taggart's direction, Thomsen inserted in the offer a provision for payment by Sunset of a 10 per cent commission, which Taggart and Thomsen agreed to divide equally. On the following day Thomsen informed Ward of the provision for the commission and Ward agreed to it. Subsequently, Taggart told Thomsen that Sunset had accepted Ward's offer and presented to him proposed escrow instructions naming Taggart's business associate, defendant H. M. Jordan, as seller acting for Taggart. Taggart stated that his designation as principal would enable him to "clear up the Dawson exclusive listing" as well as certain blanket mortgages on the property. Thomsen told Ward of this arrangement when he submitted the escrow instructions to him. When Ward asked why Jordan was to be the payee of the notes and the beneficiary of the trust deeds, Thomsen replied that Taggart had said the arrangement was prompted by certain tax and other problems of the Sunset Oil Company and that the trust deeds would be turned over to Sunset after the escrow. Plaintiffs paid $360,246 for the 72.0492 acres conveyed to them.

Plaintiffs did not learn until after they had purchased the property that Taggart had never been given a listing by

Sunset and that he had never presented to Sunset and never intended to present plaintiffs' offers of $4,000 and $5,000 per acre. Instead, he presented his own offer of $4,000 per acre, which Sunset accepted. He falsely represented to plaintiffs that the least Sunset would take for the property was $5,000 per acre, because he intended to purchase the property from Sunset himself and resell it to plaintiffs at a profit of $1,000 per acre. All the reasons he gave for the unusual handling of the sale were fabrications. He never disclosed Ward's offer to Sunset until after the escrow papers were signed. All of the money he used to pay Sunset the purchase price came from the Ward escrow.

Plaintiffs brought an action in tort charging fraud on the part of Taggart and Jordan. The case was tried without a jury, and the court entered judgment against both defendants for $72,049.20 compensatory damages, and against Taggart for $36,000 exemplary damages. The judgment also enjoined defendants from transferring notes and trust deeds received from plaintiffs and ordered them to discharge these and thereby reduce the amount of the judgment. Defendants appeal.

Defendants contend that the judgment must be reversed on the ground that, there can be no recovery in a tort action for fraud without proof of the actual or "out-of-pocket" losses sustained by the plaintiff and that in the present case there was no evidence that the property was worth less than plaintiffs paid for it. Defendants invoke section 3343 of the Civil Code, which provides that one "defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, . . ." ▉ Although, as defendants admit, the evidence is clearly sufficient to support the finding of fraud, the only evidence submitted on the issue of damages was that the property was worth at least $5,000 per acre, the price plaintiffs paid for it. Since there was no proof that plaintiffs suffered "out-of-pocket" loss, there can be no recovery in tort for fraud. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 762-763 [192 P.2d 935].)

Plaintiffs contend, however, that their recovery is not limited to actual damages, on the ground that section 3343 does not apply to a tort action to recover secret profits. They rely principally on *Crogan* v. *Metz*, 47 Cal.2d 398 [303 P.2d 1029]; *Savage* v. *Mayer*, 33 Cal.2d 548 [203 P.2d 9]; *Terry* v.

*Bender,* 143 Cal.App.2d 198 [300 P.2d 119] ; *Simone* v. *McKee,* 142 Cal.App.2d 307 [298 P.2d 667] ; *Ramey* v. *Myers,* 111 Cal.App.2d 679 [245 P.2d 360] ; and *Adams* v. *Harrison,* 34 Cal.App.2d 288 [93 P.2d 237]. These cases all involved situations in which the defendant was the agent of the defrauded person or in which a confidential or fiduciary relationship existed between the parties. They rest on the theory that "the principal's right to recover does not depend upon any deceit of the agent, but is based upon the duties incident to the agency relationship and upon the fact that all profits resulting from that relationship belong to the principal." (*Savage* v. *Mayer, supra,* 33 Cal.2d at 551.) In the present case, however, there is no evidence of an agency or other fiduciary relationship between plaintiffs and defendant Taggart or defendant Jordan. Plaintiffs dealt at arms length with Taggart through their agent Thomsen. At no time did Taggart purport to act for plaintiffs. There is no evidence of any prior dealings between the parties or any acquaintanceship or special relationship that would create a fiduciary duty of defendants to plaintiffs. ▬ In the absence of a fiduciary relationship, recovery in a tort action for fraud is limited to the actual damages suffered by the plaintiff. (*Crogan* v. *Metz,* 47 Cal.2d 398, 405 [303 P.2d 1029] ; *Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744, 762-763.)

▬ Even though Taggart was not plaintiff's agent, the public policy of this state does not permit one to "take advantage of his own wrong" (Civ. Code, § 3517), and the law provides a quasi-contractual remedy to prevent one from being unjustly enriched at the expense of another.[1] Section 2224 of the Civil Code provides that one "who gains a thing by fraud . . . or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." ▬ As a real estate broker, Taggart had the duty to be honest and truthful in his dealings. (See Bus. & Prof. Code, §§ 10150, 10176; *Rattray* v. *Scudder,* 28 Cal.2d 214, 222-223 [169 P.2d 371, 164 A.L.R. 1356].) ▬ The evidence is clearly sufficient to support a finding that Taggart violated this duty. Through fraudulent misrepresentations he received money that plaintiffs would otherwise have had. Thus, Taggart is an involuntary trustee for the benefit of plaintiffs

---

[1] Section 3343 provides that "nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

on the secret profit of $1,000 per acre that he made from his dealings with them.

 Although this theory of recovery was not advanced by plaintiffs in the trial court, it is settled that a change in theory is permitted on appeal when ''a question of law only is presented on the facts appearing in the record. . . .'' (*Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738]; *American Auto. Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App. 2d 192, 200 [318 P.2d 84].) The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that ''contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.'' (*Panopulos* v. *Maderis, supra*, 47 Cal.2d at 341.) Such is not the case here. Although the facts pleaded and proved by plaintiffs do not sustain the judgment on the theory of tort, they are sufficient to uphold recovery under the quasi-contractual theory of unjust enrichment since that theory does not contemplate any factual situation different from that established by the evidence in the trial court. Defendants were given ample opportunity to present their version of the transaction involved, and the issue of whether or not their actions constituted fraud was decided adversely to them by the trial court.

 Accordingly, the judgment for $72,049.20, representing the $1,000 per acre secret profit, against defendant Taggart must be affirmed. The judgment against defendant Jordan, however, must be reversed. Although she permitted her name to be used in the dual escrows, she did not share in the illicit profit that Taggart obtained. One cannot be held to be a constructive trustee of something he has not acquired.

Taggart contends that if recovery is based on the theory of unjust enrichment, the judgment for exemplary damages must be reversed. The argument runs that under this theory the law implies a promise to return the money wrongfully obtained, that the plaintiff waives the tort and sues in assumpsit on an implied contract, and that since such an action is ''contractual'' in nature, it does not admit of the exemplary damages allowed under section 3294 of the Civil Code. That section authorizes exemplary damages ''in an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice. . . .''

■ The word "contract" is used in this section in its ordinary sense to mean an agreement between the parties, not an obligation imposed by law despite the absence of any such agreement. ■ Taggart's obligation does not arise from any agreement between him and plaintiffs. It arises from his fraud and violation of statutory duties. His fraud is not waived, for it is the very foundation of the implied-in-law promise to disgorge. (See Corbin, *Waiver of Tort and Suit In Assumpsit,* 19 Yale L.J. 221, 243-246.) The promise is purely fictitious and unintentional, originally implied to circumvent rigid common law pleading. It was invoked not to deny a remedy, but to create one "for the purpose of bringing about justice without reference to the intention of the parties." 1 Williston, Contracts (rev. ed.) p. 9; see *Desny* v. *Wilder,* 46 Cal.2d 715, 735 [299 P.2d 257].) ■ Since Taggart's obligation for his fraud does not arise from contract but is imposed by law, the judgment for exemplary damages clearly falls within section 3294. (See *Brown* v. *Coates,* 253 F.2d 36, 39-40; *Briggs* v. *Rodriguez,* 236 S.W.2d 510, 514-516 (Tex. Civ.App); 30 Tex.L.Rev. 371, 372.) In *Crogan* v. *Metz,* 47 Cal.2d 398 [303 P.2d 1029], the only action sustainable under the pleadings was an action for breach of an agent's contractual duties. In *Steiner* v. *Rowley,* 35 Cal.2d 713 [221 P.2d 9], the plaintiff was estopped to allege a cause of action in tort to recover exemplary damages because he had obtained a writ of attachment in pursuit of the contractual remedy, "whereby he has gained advantage over the other party." (35 Cal.2d at 720.)

■ Courts award exemplary damages to discourage oppression, fraud, or malice by punishing the wrongdoer. (See McCormick, Damages, § 79; Morris, *Punitive Damages in Tort Cases,* 44 Harv.L.Rev. 1173, 1185-1188.) ■ Such damages are appropriate in cases like the present one, where restitution would have little or no deterrent effect, for wrongdoers would run no risk of liability to their victims beyond that of returning what they wrongfully obtained. (*Haigler* v. *Donnelly,* 18 Cal.2d 674, 680-682 [117 P.2d 331]; *Taylor* v. *Wright,* 69 Cal.App.2d 371, 384-386 [159 P.2d 980]; *Hartzell* v. *Myall,* 115 Cal.App.2d 670, 676-678 [252 P.2d 676]; *Foster* v. *Keating,* 120 Cal.App.2d 435, 454-455 [261 P.2d 529]; *Devers* v. *Greenwood,* 139 Cal.App.2d 345, 350 [293 P.2d 834].) The record herein discloses no abuse of discretion in the award of exemplary damages. (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 802 [197 P.2d 713]; *Finney* v.

744

*Lockhart,* 35 Cal.2d 161, 164 [217 P.2d 19]; *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330, 340-341 [240 P.2d 282]; *Hartzell* v. *Myall, supra; Foster* v. *Keating, supra;* see 14 Cal. Jur.2d 813-818.)

▉ Taggart finally contends that he is entitled to a deduction of the cost to him of the transaction except those items incurred to accomplish his fraud. He seeks to reduce the compensatory damages by $25,563.10, representing the commission of $15,012.30 paid to Thomsen; the $5,900 commission paid to Harvey Nelson, former land manager of Sunset Oil Company; the $616 cost of the two escrows, one of which channeled title from Sunset to Jordan and the other from Jordan to plaintiffs; and the $4,034.80 paid to Dawson, who had an exclusive agency on the property, to cancel his contract. The $5,900 paid to Nelson and the cost of the Jordan escrow were expenses incurred to accomplish the fraud; they would not have been necessary to a legitimate transaction. It is clear that these expenses must be disallowed. Since it is entirely speculative whether the commissions paid to Thomsen and Dawson and the cost of the second escrow would have been paid by plaintiffs or Sunset had the transaction been a legitimate one, it would be inequitable to permit Taggart to deduct any of these expenses from plaintiffs' recovery. ' (See *Kinert* v. *Wright,* 81 Cal.App.2d 919, 927 [185 P.2d 364]; *Title Insurance & Trust Co.* v. *California Dev. Co.,* 171 Cal. 173 [152 P. 542]; *McArthur* v. *Goodwin,* 173 Cal. 499 [160 P. 679].)

The judgment against Taggart is affirmed. The judgment against Jordan is reversed.

Gibson, C. J., Shenk, J., Carter, J., Spence, J., and McComb, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the judgment because it comes as close to affording justice to the wronged plaintiffs as appears possible under the presently established decisional law of this state as it interprets and applies section 3343 of the Civil Code. In fact this decision, by its ingenious innovation and application of a constructive trust-unjust enrichment-quasi-contractual theory to support an award of exemplary damages as against one of the defendants, avoids much of the evil effect of the majority holding in *Bagdasarian* v. *Gragnon* (1948), 31 Cal.2d 744, 759-763 [192 P.2d 935], and is therefore to that extent desirable.

But because the subject section as now interpreted and applied still constitutes more of a shield for, than a sword against, fraud perpetrators, I deem it proper to once more direct attention to it in the hope that the Legislature—if not this court by forthright overruling of Bagdasarian—may provide a remedy.

The judgment of the trial court is amply supported by the evidence and would clearly be supported by the law as against both defendants were it not for the conclusion reached in the Bagdasarian case that the *addition* in 1935 of section 3343 to the Civil Code (Stats. 1935, ch. 536, p. 1612, § 1) operated to repeal and supplant the previously existing law governing the measure of damages in fraud cases. It was my view then, and still is, that section 3343 was intended by the Legislature to provide an alternative, not the exclusive, measure of damages in such cases.

As pointed out by Professor Williston, under the construction of the statute adopted by the majority in the Bagdasarian case, "a fraudulent person can in no event lose anything by his fraud. He runs the chance of making a profit if he successfully carries out his plan and is not afterward brought to account for it; and if he is brought to account, he at least will lose nothing by his misconduct." (5 Williston on Contracts (rev. ed.), 3886, § 1392.)

In this connection it is to be noted that the legislation as adopted in California (Stats. 1935, ch. 536, p. 1612, § 1) expressly declares that "Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled." I would prefer to reconsider the ruling in the Bagdasarian case and hold that the remedy added by the statute of 1935 is in truth an addition to, rather than a restriction on, the remedies of the person defrauded. So holding, I would affirm the judgment of the trial court, including the award of exemplary damages as against both defendants.

Appellants' petition for a rehearing was denied April 8, 1959.