In re John **GRIESGRABER**, Debtor.

**Leora E. HUFFORD, Plaintiff,**

v.

**John A. GRIESGRABER, dba John A. Griesgraber Realty, Defendant.**

**Bankruptcy No. 83–01801–M7.
Adv. No. C84–0623–M7.**

United States Bankruptcy Court, S.D. California.

Jan. 14, 1986.

Alan M. Martin, San Diego, Cal., for Leora Hufford.

Michael J. Festa, Condon, Condon & Festa, A Professional Corp., Santa Monica, Cal., for Griesgraber.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

(Bankruptcy Rule of Procedure 7041)
F.R.C.P. Section 41(b)

JOHN J. HARGROVE, Bankruptcy Judge.

I.

INTRODUCTION

On April 13, 1983, John Griesgraber, the defendant in this case, filed his Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. Thereafter, on August

13, 1984, the plaintiff filed her Complaint to Determine Dischargeability of Debt and Objections to Discharge under 11 U.S.C. Section 523(a). Although the Complaint failed to state with any specificity precisely what subsection of section 523 she relied on, it became apparent during the trial that the plaintiff alleges violations under Section 523(a)(2)(A) and 523(a)(6).

After plaintiff completed the presentation of her evidence, the defendant moved for dismissal of the case under Bankruptcy Rule of Procedure 7041. Plaintiff requested additional time to file written Points and Authorities in opposition to the Motion and defendant requested additional time to submit written Points and Authorities in opposition thereto. The matter was then taken under submission.

## II.

### STATEMENT OF FACTS

On or about October 6, 1979, plaintiff entered into a written Listing Agreement with defendant real estate broker, authorizing defendant to sell her real property known as 2586 Majella Road, Vista, California. Plaintiff testified that she wanted $150,000.00 for the property. She also testified that prior to listing the property with defendant she was told by other brokers that she could never get $150,000.00 for the property and in fact one broker told her that she could only get $75,000.00 for the property. Plaintiff also testified that the property had a large amount of "debris" on it and that the road on the property needed repair work. After unsuccessful attempts to sell the property for $150,000.00, plaintiff testified she agreed to lower the price of the property to $120,000.00. She also testified that she told the defendant that she did not want cash for the property but wanted income and told the defendant that she needed about $800.00 per month.

Apparently, after plaintiff still could not attract a buyer for the real property at the $120,000 listing price, she and the defendant entered into a written Real Estate Purchase Contract and Receipt for Deposit on November 24, 1979, by which plaintiff sold to defendant her real property for the sum of $120,000.00. Pertinent portions of the written Real Estate Purchase Contract stated that:

"Seller will receive notes totalling 117,-000 initially, (until $10,000 is deducted from same). AFTER resale note(s) will be adjusted. Interest rate is to be 10%, amortized over 30 years all due in 8 years. Seller to receive 10% of profits from resale over 130,000 after deducting all renovation costs. Seller will subordinate to reconstruction or other financing buyer obtains. The agreement depends on buyer being satisfied with Paul (sic) Griesgraber's provision of renovation funds...."

Plaintiff received the sum of $3,000.00 cash as a down payment and also received three promissory notes secured by deeds of trust in the respective amounts of $60,000.00, $45,000.00 and $12,000.00, for a total amount of $117,000.00. On November 27, 1979, plaintiff executed three separate documents each entitled "Subordinated Deed of Trust and Assignment of Rents" which deeds of trust secured the three promissory notes. Each of the three documents entitled Subordinated Deed of Trust and Assignment of Rents, which appear to be forms produced by Transamerica Title Insurance Company, contain the following language directly under the words Subordinated Deed of Trust and Assignment of Rents:

"NOTICE: This Deed of Trust and Assignment of Rents contains a subordination clause which may result in your security interest in the property becoming subject to and of lower priority than the lien of some other or later security instrument."

The above-notice is blocked with a dark black line.

Thereafter, the escrow relating to the sale of the property was amended to provide for title to be in the name of Anna M. Schurmann. Plaintiff testified that defendant told her that Schurmann was his sister and that he needed to obtain more money

to clean up the property and that the only way that he could do this was to put the property in the name of his sister. Plaintiff testified that defendant told her that it would not take long to do this and that the property would be back in his name. Plaintiff further testified that defendant told plaintiff that if he sold the property for more than he paid for it, he would give plaintiff 10% of the profit.

The escrow closed on March 26, 1980. On May 12, 1980, Anna M. Schurmann quitclaimed the subject real property to Griesgraber Company, Inc., a California corporation. On May 13, 1980, plaintiff and Anna M. Schurmann executed a written Subordination Agreement which was recorded on May 16, 1980. The written Subordination Agreement contained the following language in capital letters directly under the words "Subordination Agreement":

"NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT."

Under the terms of the written Subordination Agreement, the three deeds of trust were held by plaintiff as beneficiary and were subordinated to a new deed of trust, securing an obligation in the amount of $40,000.00 to Oceanside Financial Services, Inc.

On May 4, 1981, over a year after plaintiff sold the subject real property, plaintiff, the Griesgraber Company, Inc., a California corporation, and Stephen G. Feeney and Rosalie Feeney (collectively "Feeney") entered into a written "Financing Agreement" pursuant to which the Griesgraber Company sold all of its interest in the subject property to the Feeneys and the Feeneys substituted three new Promissory Notes secured by Deeds of Trust in the amount of $43,772.63, $62,737.05 and $11,927.42; the Notes were secured by the subject property. The written Financing Agreement stated in paragraph 1.2(d) that, "These notes shall be a novation of and substitute for the existing obligation of Griesgraber to Hufford." Pursuant to the terms of the $43,772.63 Note, dated April 16, 1981, the plaintiff was to receive a principal installment of $5,000.00 some four months later on August 12, 1981. The Financing Agreement also indicated that, "All parties are aware that John Griesgraber and Feeney are real estate licensees in the State of California acting as principals only in this Agreement and the escrow in conjunction therewith. The parties acknowledge that no commissions are being paid by any party to any other party in connection with this escrow."

Plaintiff testified that she met with Feeney by herself at the Airporter Inn in Newport Beach, California. She testified that the defendant was not present. She testified that she asked Feeney what the effect of the sale of the property and the Subordination Agreements would have on her promissory notes and he advised her that the sale and Subordination Agreements would have no effect. Plaintiff also testified she received $5,000.00 in cash from Feeney as part of the transaction.

On October 30, 1982, Feeney entered into a written Assumption Agreement with James W. Baumgartner, a trustee under a family trust, wherein Feeneys sold the subject property to Baumgartner and Baumgartner, as trustee, assumed plaintiff's Promissory Notes. Plaintiff was a party to the Assumption Agreement and executed the same. Thereafter, payment on the various Trust Deeds went into default and on May 31, 1984 the real property was sold at a non-judicial foreclosure sale held pursuant to a power of sale contained in a Trust Deed senior to that of the Trust Deeds held by the plaintiff. The foreclosure sale thereby eliminated plaintiff's security interest in the property.

### III.

### DISCUSSION

This Motion to Dismiss is brought pursuant to Federal Rule of Civil Procedure 41(b)

which is made applicable to adversary proceedings by Bankruptcy Rule 7041.

A Motion to Dismiss pursuant to Section 41(b) is appropriate when:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

F.R.C.P. 41(b).

On such motions, the trial judge must accept all proof of evidence supporting the position of the plaintiff and give to the plaintiff the benefit of all inferences that may logically and legitimately be drawn therefrom and view all circumstances in the light most favorable to the plaintiff. *Caporossi v. Atlantic City, New Jersey*, 220 F.Supp. 508 (1963); *Middleton v. Northfolk and W. Ry. Co.*, 165 F.2d 907 (1948).

In the instant case, plaintiff contends that defendant was guilty of fraudulent conduct under 11 U.S.C. Section 523(a)(2)(A) in failing to explain the ramifications of the Subordination Agreements which had the effect of placing plaintiff's three promissory notes in a position of second priority to the $40,000.00 note secured by deed of trust in favor of Oceanside Financial Services, Inc.

In an action based upon fraud under Section 523(a)(2)(A), plaintiff must prove that:

(1) The debtor made the representation;

(2) at the time he knew they were false;

(3) he made them with the intention and purpose of deceiving the creditor;

(4) the creditor relied on said representations;

(5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Criswell*, 52 B.R. 184, 196 (Bankr.E.D.Va.1985); *In re Taylor*, 49 B.R. 849, 850–851 (Bankr.E.D.Pa.1985).

Additionally, the creditor carries the burden of proof and must produce clear and convincing evidence in support of her contentions. Further, the exceptions to the discharge are to be strictly construed. *In re Sobel*, 37 B.R. 780, 785 (Bankr.E.D.N.Y. 1984).

■ In the instant case, plaintiff's own testimony dispels any notion of fraud on the part of defendant. Documentary evidence and plaintiff's testimony reveal that the defendant informed plaintiff that he was to purchase the subject property as a principal and that she understood this. Further, plaintiff testified that the defendant went through all of the purchase and escrow documents line by line with her. She also testified that the defendant may have explained "the subordination part" to her but that she could not recall it. She also testified that the defendant appeared willing to answer any questions if she asked them, but that she did not have any questions regarding the documents and that she didn't ask the defendant to explain them because she "figured he knew what he was doing". She testified that she glanced at the documents but did not read them because she believed that the defendant was acting in her best interests. She also testified that she has no problem in reading.

The evidence presented by plaintiff fails to show in a clear and convincing fashion that the defendant made any sort of a false representation with the intent to deceive the plaintiff. The problem in this case is that the plaintiff placed total reliance on the defendant to take care of her. However, based on the testimony of the plaintiff, it is clear that defendant assumed that the plaintiff read and understood the Purchase Agreement, Escrow Instructions and the subordination documents. The assumption appears reasonable under the circumstances since plaintiff testified that "she didn't have any questions about the documents". She also testified that at one point in time the defendant introduced her and her sister to an attorney because her sister needed legal work regarding real

estate. The plaintiff testified she went to the attorney's office with her sister but did not question the attorney regarding anything about her transaction.

The record of trial simply does not support plaintiff's allegations of any type of misrepresentation on the part of the defendant in connection with the sale of her real property. Further, plaintiff did not, at any point in her testimony, assert that defendant converted any portion of the $40,-000.00 loan which she subordinated her trust deed to; the proceeds of which were apparently used to renovate the plaintiff's real property thereby making it more attractive for sale at a higher price.

Plaintiff's contention that defendant, as a licensed California real estate broker, breached his fiduciary duty to her in failing to explain the ramifications of the Subordination Agreements appears to be a case of first impression in this Circuit.

Under California law, a fraudulent breach of duty is a tort and the faithless fiduciary is obligated to make good the full amount of the loss of which his breach of faith is a cause. *Pepitone v. Russo*, 64 Cal.App.3d 685, 134 Cal.Rptr. 709 (1976).

Plaintiff cites *Pepitone, supra, Hartzell v. Myall*, 115 Cal.App.2d 670, 252 P.2d 676 (1953), and *Simone v. McKee*, 142 Cal. App.2d 307, 298 P.2d 667 (1956) (hereinafter the "California broker cases") in support of her legal contention that defendant's alleged failure to explain the legal ramifications of the Subordination Agreements amounts to active concealment or suppression of material facts, which nondisclosure, by reason of the fact that the defendant was a fiduciary, is the equivalent of a false representation under Section 523(a)(2)(A) of the Bankruptcy Code.

In the California broker cases cited by the plaintiff, the facts reveal that the broker/defendants involved in those cases failed to disclose to the seller the existence of an acceleration clause (*Pepitone*, 64 Cal. App.2d at 688, 134 Cal.Rptr. 709); mispresented to the sellers the amount of cash they would receive at the close of escrow (*Hartzell*, 115 Cal.App.2d at 673, 252 P.2d 676); and failed purposely to disclose a higher offer to the seller so that the seller accepted a low offer to a different buyer which the broker within a few days of the acceptance of the lower offer then brokered a sale on the same property to the nondisclosed offeror and received commissions on both sales (*Simone*, 142 Cal. App.2d at 210–211, 298 P.2d 667).

Relying on the California broker cases, plaintiff attempts to equate what can only be described as classic nondisclosure by a broker with a failure to explain.

Plaintiff's reliance on the California broker cases is misplaced. Defendant broker's failure to explain the legal effect of a Subordinated Deed of Trust and a Subordination Agreement, does not equate to a false representation actionable under Section 523(a)(2)(A) of the Bankruptcy Code. Accordingly,

IT IS ORDERED that defendant's Motion to Dismiss is granted.