Filed 9/19/23  P. v. Yancy CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>CHRISTOPHER BERNARD YANCY,<br><br>   Defendant and Appellant. | B320666<br><br>(Los Angeles County<br>Super. Ct. No. PA058905-01) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, David W. Stuart, Judge.  Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy

Attorney General, and Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted Cristopher Bernard Yancy in October 2010 of the second degree murder of Bobby Ray Gates.  We affirmed the judgment on direct appeal, holding, in part, the trial court's instruction that an aider and abettor was equally guilty of the crime as the perpetrator who committed it was harmless error under the circumstances of Yancy's case.  (*People v. Yancy* (July 23, 2012, B228563) [nonpub. opn.].)

In May 2022, after appointing counsel for Yancy and receiving memoranda from the prosecutor and Yancy's counsel, the superior court denied Yancy's petition for resentencing under Penal Code section 1172.6 (former section 1170.95),[1] finding, although the jury had received torture-felony-murder instructions, the record of conviction established as a matter of law that Yancy was ineligible for resentencing relief.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Yancy's Murder Conviction*

a. *The evidence at trial*

In the early morning of December 5, 2005 Sidney Cole, Beatrice Brothers's adult son, woke up Lachelle Robinson, Brothers's daughter, at her home and told her to go to Brothers's residence immediately.  Soon after Robinson arrived, Yancy and his uncle, Sam Persons, Brothers's boyfriend, came to the home at Brothers's request.  Brothers told Robinson, Yancy and Persons that Gates, who lived with his girlfriend in a converted

_____

[1]     Statutory references are to this code.

garage in the back of Brothers's house, had molested one or more of Brothers's grandchildren.[2]

Gates, who had been called into the house by Brothers, was taken to the garage, where Brothers, Persons and Yancy took turns beating him with a stick while he was confined to a chair. Yancy told police, "It wasn't just me killing that man. . . . Everybody took part in this shit." Yancy explained in his interview with police that he, Persons and Brothers were all "outraged" and wanted to beat Gates for "raping kids." According to Yancy, Brothers sodomized Gates with a rod during the attack. At some point, Yancy claimed, he had had enough and left while the others continued to beat Gates. According to Yancy, when he left, Gates was still alive, and nothing had been stuffed down his throat.

Gates's body was found on December 6, 2005 near a freeway in Lakeview Terrace. The body was wrapped in a blue tarp that had been lit on fire. Gates's wrists were bound behind his back with a shoestring and a braided cord. A shirt or cloth had been stuffed in Gates's mouth, and his eyes were covered with a blindfold. Gates had suffered bruising to his face, chest, abdomen, back, arms and legs, with lacerations on his forehead and face. The Los Angeles County deputy coroner who performed the autopsy opined Gates died primarily from asphyxiation caused by a cloth stuffed down his throat although blunt force trauma was also a contributing cause of death.

Yancy did not testify or present any defense witnesses.

---

[2] The description of the events leading to the death of Gates was based primarily on Yancy's and Robinson's recorded police interviews.

b. *The instructions*

The People presented three theories to support the charge of murder: (1) Yancy directly committed (was the perpetrator of) Gates's murder (acting with express or implied malice); (2) Yancy aided and abetted the perpetrator of the murder; (3) Yancy committed, or aided and abetted, torture, a serious felony that resulted in Gates's death (first degree felony murder). The defense theory was that Yancy was at most guilty of manslaughter, either voluntary manslaughter based on heat of passion or involuntary manslaughter based on a misdemeanor battery resulting in death.

As pertinent to Yancy's current appeal, the court defined express and implied malice pursuant to CALCRIM No. 520 (murder with malice aforethought): "The defendant acted with express malice if he unlawfully intended to kill. The defendant acted with implied malice if: 1. He intentionally committed an act; 2. The natural consequences of the act were dangerous to human life; 3. At the time he acted, he knew his act was dangerous to human life; and 4. He deliberately acted with conscious disregard for human life."[3] The court also instructed with CALCRIM Nos. 521 (degrees of murder); 540A and 540B (first degree felony murder based on torture or aiding and abetting torture); 810 (elements of torture); 570 (voluntary manslaughter based on killing in heat of passion); and 522

---

[3] When quoting this and other instructions given at Yancy's trial, we have omitted unnecessary paragraphing, italics and capitalization.

4

(provocation reducing first degree murder to second degree or voluntary manslaughter).[4]

In light of Yancy's defense the court also gave CALCRIM No. 580 (involuntary manslaughter based on misdemeanor battery): "When a person commits an unlawful killing but does not intend to kill and does not act with conscious disregard for human life, then the crime is involuntary manslaughter. The difference between other homicide offenses and involuntary manslaughter depends on whether the person was aware of the risk to life that his or her actions created and consciously disregarded that risk. An unlawful killing caused by a willful act done with full knowledge and awareness that the person is endangering the life of another, and done in conscious disregard of that risk, is voluntary manslaughter or murder. An unlawful killing resulting from a willful act committed without intent to kill and without conscious disregard of the risk to human life is involuntary manslaughter. The defendant committed involuntary manslaughter if: 1. The defendant committed a misdemeanor crime that posed a high risk of death or great bodily injury because of the way in which it was committed; and 2. The defendant's acts unlawfully caused the death of another person." The court added to the pattern instruction, "Depending on your point of view, the facts in this case could be construed to suggest that the defendant committed an uncharged misdemeanor battery. The definition of misdemeanor battery

---

[4] The court's instruction on provocation, after stating provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter, included the explanation, "Provocation does not apply to a prosecution under a theory of felony murder."

will be provided in the very next instruction.[5] . . . . In order to prove murder or voluntary manslaughter, the People have the burden of proving beyond a reasonable doubt that the defendant acted with intent to kill or with conscious disregard for life. If the People have not met either of these burdens, you must find the defendant not guilty of murder and not guilty of voluntary manslaughter."

The jury was also instructed on aiding and abetting with CALCRIM former No. 400 (general principles of aiding and abetting): "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

In addition, the court gave CALCRIM No. 401 (aiding and abetting: intended crimes): "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: 1. The perpetrator committed the crime; 2. The defendant knew that the perpetrator intended to commit the crime; 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the

---

[5]     The court defined simple battery using CALCRIM No. 960.

6

perpetrator's commission of that crime.  If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

### c. *Verdict and sentence*

The jury convicted Yancy of second degree murder and found true an enhancement allegation he had personally used a deadly or dangerous weapon when committing the offense.  The court sentenced Yancy to an aggregate indeterminate state prison term of 16 years to life.

### 2. *Yancy's Direct Appeal*

We affirmed Yancy's murder conviction on appeal (*People v. Yancy*, *supra*, B228563), rejecting both his arguments for reversal.  First, we held the trial court had not erred in denying Yancy's motions for mistrial based on improper comments during Yancy's trial indicating that Brothers had previously been charged and convicted for her role in Gates's homicide.[6]  On each occasion the trial court had admonished the jury to disregard the remark.  We held the court's prompt and careful admonitions cured any error.

---

[6] Brothers, Yancy and Persons were tried separately. Brothers was initially tried before Yancy, convicted of first degree murder and sentenced to 26 years to life in prison.  After Yancy's trial had concluded, we reversed Brothers's conviction based on instructional error and remanded the case for a new trial. (*People v. Brothers* (Dec. 12, 2011, B225376) [nonpub. opn.].) When she was retried, Brothers, who testified at her new trial, was convicted of voluntary manslaughter.  We affirmed that conviction.  (*People v. Brothers* (2015) 236 Cal.App.4th 24.)

Second, we agreed with Yancy that the court erred in instructing the jury pursuant to CALCRIM former No. 400 that a person is "equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it" because it suggested a defendant could be guilty of murder, even if he or she acted in the heat of passion, based solely on the greater culpable mental state of his or her coparticipants. But we held under the circumstances of his case the error was harmless beyond a reasonable doubt. We explained, "For the erroneous instruction to have had any effect in this case, the jury would have had to have found that Yancy had acted in the heat of passion while one or more of his coparticipants had acted with express or implied malice. It is simply not conceivable on this record that the jury could have found the children's grandmother and/or her boyfriend had not acted in the heat of passion, but that Yancy, who, by his own admission, did not know Brothers or any of her grandchildren, had."

### 3. *Yancy's Petition for Resentencing*

On April 19, 2019 Yancy, representing himself, filed a petition for resentencing pursuant to former section 1170.95. The superior court appointed counsel to represent Yancy during the proceedings. The prosecutor filed two memoranda in response; and Yancy's counsel filed a reply memorandum, arguing, because the jury had been instructed on the felony-murder rule and aiding and abetting a felony murder, it was unclear whether Yancy had been convicted on a now-invalid theory of imputed malice. After argument of counsel at a hearing on May 25, 2022 to determine whether to issue an order to show cause, the

8

superior court denied the petition, finding the record of conviction conclusively established Yancy was ineligible for relief.

Explaining its ruling at the hearing the court stated, based on the instructions given at Yancy's trial and the jury's verdict, the only possible conclusion was that "the jury found [Yancy] either actually killed the victim—with intent, with express malice or implied malice—or aided and abetted his cohorts with intent to kill. If the jury had found that [Yancy] participated in torture without intent to kill and the victim had died, they would have found [him] guilty of first degree felony murder. But that didn't happen. . . . And there is no instruction or suggestion that any intent to kill was imputed to him based on any legal theory or any codefendant's state of mind."

Yancy filed a timely notice of appeal.

## DISCUSSION

1. *Section 1172.6 Petitions for Resentencing*

Under the ameliorative changes to the law relating to accomplice liability for murder effected by Senate Bill No. 1437 (Stats. 2018, ch. 1015), malice must be proved to convict a principal of murder except under the narrowed felony-murder rule set forth in revised section 189, subdivision (e), and may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)), thereby eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843; see *People v. Reyes* (2023) 14 Cal.5th 981, 984). As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2), effective January 1, 2022, Senate Bill No. 1437's changes to the law of murder expressly apply to individuals convicted of attempted murder and voluntary manslaughter.

Section 1172.6 authorizes an individual convicted of murder under the felony-murder rule or murder or attempted murder based on the natural and probable consequences doctrine or any other theory under which malice is imputed based solely on that person's participation in a crime to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder or attempted murder under revised sections 188 and 189. The superior court may not engage in judicial factfinding or make credibility decisions before issuing an order to show cause pursuant to section 1172.6, subdivision (c), and conducting an evidentiary hearing pursuant to section 1172.6, subdivision (d), to determine whether the People have proved the petitioner is guilty of murder or attempted murder under current law. (*People v. Lewis* (2021) 11 Cal.5th 952, 970-971.) However, when first evaluating whether the petitioner has carried the burden of making a prima facie showing of entitlement to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971; accord, *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.) "[I]f the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Lewis*, at p. 971, internal quotation marks omitted.)

We review de novo whether the superior court conducted a proper prima facie inquiry under section 1172.6, subdivision (c). (*People v. Williams, supra*, 86 Cal.App.5th at p. 1251; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

10

### 2. *Yancy Is Ineligible for Relief Under Section 1172.6*

Yancy does not challenge the superior court's finding that his second degree murder conviction could not have been based on the felony-murder rule. And it is undisputed the jury was not instructed on the natural and probable consequences doctrine. Thus, Yancy's murder conviction was necessarily based on a jury finding that he was an actual killer of Gates or he directly aided and abetted the actual killer. Although the record of conviction does not disclose which theory the jury applied, it does establish the guilty verdict was not based on a theory of imputed malice.

As Yancy contends, the prosecutor stated in his closing argument he could not prove it was Yancy who put the gag in Gates's mouth, which the coroner testified was the primary cause of death. But, as discussed, the coroner also testified blunt force trauma was a contributing factor in Gates's death; and the trial court instructed the jury pursuant to CALCRIM No. 620 there could be more than one cause of death and an act causes death if it is a substantial factor in causing the death.[7] Thus, the jury could have convicted Yancy as one of Gates's actual killers because it concluded he viciously beat Gates with a stick with the intent to kill (express malice) or with conscious disregard for human life (implied malice) without imputing malice to Yancy. (See *People v. Carney* (2023) 14 Cal.5th 1130, 1146-1147 [finding

---

[7] The court also instructed with language taken from CALCRIM No. 240 (causation): "When there are multiple concurrent causes of death, you are not required to decide whether the defendant's conduct was the primary cause of death, but need only decide whether the defendant's conduct was a substantial factor in causing death."

a defendant guilty of murder under a substantial concurrent cause analysis does not involve imputing malice].)

Similarly, if, pursuant to CALCRIM No. 401, the jury concluded the actual killer (Brothers or Persons) acted with the intent to kill Gates and, with knowledge of the perpetrator's intent, Yancy specifically intended to, and did in fact, aid in the commission of the murder, Yancy's conviction of second degree murder would not be predicated on an invalid theory of imputed malice. (See *People v. Johnson* (2016) 62 Cal.4th 600, 641.) But the jury might also have convicted Yancy of second degree murder as the aider and abettor of the perpetrator acting with implied, not express, malice. Relying on *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*), Yancy contends an ambiguity in CALCRIM No. 401 discussed in those cases, particularly when coupled with the "equally guilty" language in CALCRIM former No. 400, would have permitted the jury to convict him of second degree murder by imputing the implied malice of one of the other participants in the beating of Gates without finding that he personally acted with an intent to kill or conscious disregard for life, thereby precluding a determination at the prima facie stage that he is ineligible for resentencing relief as a matter of law.[8] The record of conviction does not support Yancy's argument.

---

[8]     The Attorney General argues Yancy forfeited this claim because he argued in the superior court only that the instructions and prosecutor's argument invited the jury to convict him for aiding and abetting a felony murder, not that CALCRIM former No. 400 and No. 401 allowed the jury to convict him under a

The Supreme Court in *People v. Reyes*, *supra*, 14 Cal.5th at page 990 confirmed that aiding and abetting an implied malice murder remains a valid theory of murder liability notwithstanding Senate Bill No. 1437's amendments to sections 188 and 189. Quoting from *Powell, supra*, 63 Cal.App.5th at pages 712 to 713 (footnote omitted), the Court explained, "'[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea. [Citation.] In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act.

theory of imputed malice. Yancy responds by citing section 1259, which provides the appellate court may review any instruction that affects the substantial rights of the defendant even if no objection was made in the trial court. Section 1259 is inapplicable. Yancy is not arguing the superior court erred in giving CALCRIM No. 401 but that, because CALCRIM No. 401 was given and is ambiguous, the superior court erred in concluding the record of conviction demonstrated his ineligibility for resentencing relief as a matter of law—an entirely different proposition. Nonetheless, because we review de novo the superior court's determination a petitioner failed to make a prima facie showing of entitlement to resentencing relief under section 1172.6, we exercise our discretion to address the issue even though not previously raised. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [appellate courts have discretion to consider questions of law based on undisputed facts even though not raised in the trial court]; *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [new theory pertaining to question of law on facts appearing in the record may be raised for the first time on appeal]; *Meridian Financial Services, Inc. v. Phan (*2021) 67 Cal.App.5th 657, 699 [same].)

13

Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act.  The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.'"  (*Reyes*, at pp. 990-991.)

Yancy does not contest the validity of a conviction for second degree murder based on aiding and abetting an implied malice murder, but contends, as the courts held in *Maldonado*, *supra*, 87 Cal.App.5th at pages 1265 to 1266, *Langi*, *supra*, 73 Cal.App.5th at pages 982 to 983, and *Powell*, *supra*, 63 Cal.App.5th at page 714, that CALCRIM No. 401 (and the substantially similar CALJIC No. 3.01), is flawed because the instruction refers to the aider and abettor's knowledge of the perpetrator's purpose, which in an implied malice case does not include an intent to kill, and an intent to facilitate the commission of the crime by the perpetrator without stating aiders and abettors must themselves have known the act being aided was life-threatening or that they must themselves have acted with indifference to human life.  Accordingly, as the *Maldonado* court explained in reversing the superior court's order finding the petitioner had failed to make a prima facie case for resentencing relief, although the jury "could have construed the instructions as requiring the aider and abettor know the perpetrator intended to commit the act *and* know the perpetrator acted with implied malice—in other words, know the perpetrator knew the act was dangerous to human life and deliberately disregarded the risk to life," it also could have reasonably construed the instructions to

14

convict the petitioner as an aider and abettor based on his intent to encourage the perpetrator's act whether or not he personally knew of and disregarded the risk of death—"a theory of imputed malice." (*Maldonado*, at pp. 1266-1267.)

Applying the reasoning of these cases, Yancy argues the jury could have found he aided and abetted the implied malice murder of Gates by Brothers or Persons without himself acting with indifference to human life or intending to encourage not only the act that caused Gates's death but also the perpetrator's deliberate disregard that the act was dangerous to human life—thereby impermissibly imputing the perpetrator's implied malice to him. Whatever we may think of the *Powell-Maldonado* line of cases, Yancy's analysis fails to consider his trial theory of involuntary manslaughter and CALCRIM No. 580. As discussed, the jury was instructed, if it found Yancy did not intend to kill Gates and did not act with conscious disregard for human life, he was guilty, at most, of involuntary manslaughter, not murder. The jury's rejection of that theory necessarily means it found he acted with express or implied malice, even if CALCRIM No. 401, considered in isolation, might have permitted a guilty verdict on a now-prohibited basis.

The equally guilty language in CALCRIM former No. 400, even when considered in conjunction with the purported ambiguity in CALCRIM No. 401, does not further Yancy's argument the superior court erred in concluding the record of conviction established he was ineligible for resentencing as a matter of law. The problem with the former version of CALCRIM No. 400, as discussed in *People v. Nero* (2010) 181 Cal.App.4th 504, and *People v. Samaniego* (2009) 172 Cal.App.4th 1148, the cases upon which Yancy relies, is that an aider and abettor of a homicide could be

guilty of a lesser homicide offense than the perpetrator if the aider and abettor had a less culpable mens rea. Thus, as Yancy unsuccessfully argued in his direct appeal, the jury might have believed Yancy participated in the attack on Gates in the heat of passion after hearing that Gates had raped Brothers's grandchild but found him guilty of second degree murder because the actual killer was not similarly provoked. The jury's rejection of the defense's involuntary manslaughter theory, however, refutes Yancy's contention on appeal that he might have been convicted of murder for his role in Gates's homicide without a finding he acted with either an intent to kill or conscious disregard for life.

In addition, the potentially misleading language in CALCRIM former No. 400 created, at most, a question of trial error. It did not transform Yancy's case into a prosecution based on a theory "under which malice was imputed to a person solely on that person's participation in a crime." (§ 1172.6, subd. (a).) To reiterate, aiding and abetting implied malice murder was and remains a valid theory of murder liability. Yancy's remedy for an erroneous instruction given during a trial for murder on theories unaffected by Senate Bill Nos. 1437 and 775 was a direct appeal (which he took and lost) or a petition for writ of habeas corpus, not a petition for resentencing under section 1172.6.

Finally, putting aside that the jury had been instructed to disregard the references to Brothers's conviction and life sentence for her role in Gates's death and that we presume the jury followed the court's instruction to disregard those comments (see, e.g., *People v. Schultz* (2020) 10 Cal.5th 623, 674), the jury never learned that Brothers had been convicted of first degree murder, whether she had been convicted on a felony-murder theory without any finding of malice, or even that her conviction was for murder,

16

rather than manslaughter.  Even if the jury considered CALCRIM former No. 400's equally guilty language, therefore, its finding that Yancy was guilty of second degree murder could not have been influenced by its knowledge that Brothers had been convicted of something, let alone the basis for imputing malice from Brothers to Yancy.

## DISPOSITION

The postjudgment order denying Yancy's petition for resentencing is affirmed.


PERLUSS, P. J.


We concur: :


FEUER, J.


MARTINEZ, J.