[Civ. No. 18888.   Second Dist., Div. One.   June 16, 1952.]

EUGENE B. RAMEY, JR., et al., Respondents, v. ROBERT M. MYERS et al., Appellants.

L. H. Phillips and Blase A. Bonpane for Appellants.

Manasse & Crowley and Herbert Manasse for Respondents.

DRAPEAU, J.—Plaintiffs, mother and son, owned two parcels of real property: one in Indiana and the other located on Normandie Avenue in Los Angeles. Mr. Ramey and de-

fendant Myers had been friends for a number of years. Mr. Myers was a licensed real estate agent and was associated with defendant Buckley, a Los Angeles realtor.

In March of 1948, plaintiffs were being evicted and Mr. Ramey telephoned defendant Myers to see if he could help to find them "a place to live with income." By appointment, the two men met at the Buckley office. Thereafter, Mr. Myers showed several pieces of property to Mr. Ramey, among them a rooming house and a property on Sunset Boulevard. The latter consisted of two separate buildings with a vacant lot to the west, and contained 20 apartments and six rooms which were being converted into living quarters.

On their first visit to Sunset, defendant Myers told Mr. Ramey that the unfinished rooms would be completed before delivery of the property; that the income was about $1,200 per month, could be increased to $1,600 with a small amount of work; that the owner was asking $70,000 for the property and had it listed for sale with the Buckley Company. At a later visit, Mr. Myers told Ramey that Mrs. Rondeau was the owner and wanted $77,000. He also advised plaintiffs that an apartment house would be a better investment than a rooming house; that Sunset was a good buy and a wonderful investment.

Within a few days, plaintiffs agreed to trade in their Indiana and Normandie properties on the Sunset apartments, and Mr. Myers and his wife called at plaintiffs' home one evening with some papers for plaintiffs to sign. One was authority to borrow $40,000 on Sunset. Another was an agreement giving Buckley Company the right to sell the Normandie and Indiana properties. At this meeting, Mr. Myers assured plaintiffs that he would take care of everything and plaintiffs would get a good deal.

A day or two later, i.e., on March 11, 1948, an escrow was opened with the Wilshire Escrow Company in Los Angeles, defendant Myers dictating the instructions over the telephone. At this time Mr. Buckley told Mr. Ramey that Sunset was a good buy and produced a good income; and that Mrs. Rondeau, who was a very good businesswoman, was the owner.

By the terms of the escrow, the equities in the Indiana and Normandie properties were to be exchanged for the equity in Sunset. The equity of plaintiffs in their two properties was placed at $30,000 which was to be applied against the purchase price of $70,000 for Sunset, plaintiffs assuming two

trust deeds aggregating $40,000 for the balance of the purchase price.

About a week after opening of the escrow, defendant Myers handed to Mr. Ramey a statement typed on a Buckley Company letterhead showing that the rentals of the Sunset property aggregated $1,116 per month.

When Mr. Ramey, accompanied by Mr. Myers, went to take possession of the Sunset apartments at the close of escrow on May 18, 1948, he discovered that the basement rooms had not been completed as promised; also that the city of Los Angeles would not permit occupancy of the rooms because of violations of the Health and Safety Code. Plaintiff complained of these matters to defendant Buckley, who told him that a lawsuit had been filed to protect his (Ramey's) rights and that everything would be taken care of. The suit referred to had been filed the day before the close of escrow, and the costs thereof were paid by defendant Buckley.

During the month of June, 1948, the rentals from the property were $600 instead of $1,116 as shown by defendants' statement.

Prior to the purchase of Sunset by the plaintiffs, to wit, on February 20, 1948, the Rondeaus gave defendant Buckley an option to purchase said property for a stated price of $55,500. And during the pendency of the Wilshire escrow, defendant Buckley opened an escrow at Citizens National Bank in order to have his niece, defendant Helen M. Catherman, take title to Sunset for him in the exercise of his option. He also opened another escrow at the Hollywood State Bank to refinance the indebtedness against Sunset.

Both of plaintiffs' properties were conveyed to said Catherman, and she in turn conveyed them to third parties. She also executed the deed of the Sunset property to plaintiff Ramey.

Mrs. Catherman received no remuneration for acting as defendant Buckley's nominee in these and many other transactions. And it was not until after the Wilshire escrow was closed, i.e., sometime in 1949, that Mr. Ramey discovered who she was and that Mr. Buckley had, and exercised, the option to purchase Sunset.

By the instant action, plaintiffs sought to recover $30,000 damages resulting from the alleged fraud and double dealing of defendants.

There was evidence that Catherman conveyed the Normandie property to one Moore for a total consideration of $15,-

194.87; and that the sale of the Indiana property netted $14,654.84, a total of $29,849.71. This sum plus $40,000 in trust deeds assumed by plaintiffs, brought the total price of the Sunset property to $69,849.71. The Sunset property was conveyed to Catherman on behalf of Buckley for a total consideration of $48,825.

The trial court instructed the jury on two theories of the case: (1) agency, fiduciary relationship and plaintiffs' right to recover secret profits; (2) fraud on the part of the seller.

The jury brought in a verdict for $20,000 against defendants Myers and Buckley. Their motion for a new trial having been denied, they appeal from the judgment based on the verdict.

It is here urged that the issues of agency, fiduciary relationship and the right to secret profits were not within the scope of the pleadings, hence the admission of evidence in support thereof was erroneous.

At the start of the instant trial, defendants objected to the introduction of any evidence on the questions of secret profits and agency. This for the reason that the complaint sounded in fraud and did not allege that defendants were the agents of plaintiffs.

In overruling this objection, the trial court commented:

"Although plaintiffs do not directly plead agency, that is, that defendants were their agents, they do set forth in some detail the relationship between Myers and Ramey so as to show a confidential relationship, or agency. Of course, they have to prove agency. There is so much set forth in the complaint as to Myers being the adviser and personal friend of the plaintiff Ramey that I cannot say at this time whether or not he was the agent of plaintiff. I am going to permit the evidence to go in and overrule your objections. Was there any objection in the law and motion department to plaintiffs' pleadings?"

"Mr. Bonpane: No, your Honor. We did not file any motion or demurrer. We did not think it was necessary because we felt that this was clearly a straight fraud action, and we planned to make our objections in the event that the plaintiffs attempted to prove agency."

"It is not necessary in this state to plead with the exactitude required at common law. Section 452 of the Code of Civil Procedure provides that 'In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial

justice between the parties.' Section 475 of the Code of Civil Procedure declares that 'The court must, in every stage of an action, disregard any error . . . or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties.' Many decisions apply this rule. (Citation of authorities.)'' *Steiner* v. *Rowley*, 35 Cal.2d 713, 719 [221 P.2d 9].

■ And, as stated in *Sands* v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782] : ''Even if the agency relation were only alleged by inference, as contended by appellants, or if the allegations as to the manner in which Tarman took a concealed adverse interest in the transaction were uncertain or ambiguous, such defects of form, which are subject to special demurrer but can be cured by amendment, were waived where no special demurrer was interposed. *Hill* v. *Haskin*, 51 Cal. 175; *Colton* v. *Onderdonk*, 69 Cal. 155, 157 [10 P. 395, 58 Am.St.Rep. 556] ; *People* v. *McDonald*, 200 Cal. 716, 717 [255 P. 180] ; *Abos* v. *Martyn*, 31 Cal.App. 2d 705, 708 [88 P.2d 797].''

■ The complaint alleged that Myers, a real estate salesman, was working for Buckley, a realtor, and that his dealings with plaintiffs were within the scope of his authority as agent for Buckley.

''That the Plaintff, Eugene B. Ramey, is, and at all times herein mentioned, was a singer and voice coach with no business experience, particularly in connection with real estate transactions, and for many years last past has relied on the Defendant, Robert M. Myers, as a friend.''

Also, that Ramey told Myers he wanted to sell or trade his two parcels of real estate for a piece of income property in Los Angeles. Myers replied that he could accomplish this very easily and get Ramey a ''good deal.'' Thereafter, Myers showed Ramey several pieces of property, including the Sunset property which he advised him would be a ''good buy and a wonderful investment.'' That ''relying on the friendship and confidential relationship'' between him and Myers, plaintiff ''agreed to purchase the Sunset Boulevard property and signed an instrument purporting to bind him for the purchase.'' At the same time plaintiff executed deeds in blank to the properties he owned and delivered them to defendants Myers and Buckley; and the latter proceeded to open an escrow with defendant Wilshire Escrow Company for the purpose of exchanging plaintiff's properties for the Sunset Boulevard property.

We are of the opinion that the 'complaint sufficiently alleges the existence of a gratuitous agency between plaintiff Ramey and defendants Myers and Buckley.

"While a gratuitous agent cannot be compelled to enter upon the performance of any agency, nor be mulcted in damages for his failure to do so, when he does enter upon such performance he is, in common with all other agents, bound to exercise the utmost good faith in dealing with his principal. A gratuitous agent has no greater license to indulge in misrepresentations, concealments, or other breaches of good faith than an agent for hire. Thus, a gratuitous agent cannot, while acting for his principal, make any secret profit for himself out of the transaction being conducted by him, without being accountable to the principal." 2 Cal. Jur.2d 774, § 105, and authorities there cited.

As stated by our Supreme Court in *Savage* v. *Mayer,* 33 Cal.2d 548, 551 [203 P.2d 9] : "In the absence of special circumstances, moneys received by one in the capacity of agent are not his, and the law implies a promise to pay them to the principal on demand. (*De Leonis* v. *Etchepare,* 120 Cal. 407, 409-410 [52 P. 718] ; see also *Oil Well Core Drilling Co.* v. *Barnhart,* 20 Cal.App.2d 677 [67 P.2d 696] ; 1 Mechem, Agency [1914], § 1342.) It follows that the principal's right to recover does not depend upon any deceit of the agent, but is based upon the duties incident to the agency relationship and upon the fact that all profits resulting from that relationship belong to the principal. Thus section 3343 of the Civil Code, which provides the measure of damages in a suit based upon fraud in the sale or exchange of property, does not operate to limit a principal's recovery to those damages even though the profits may have been acquired through fraudulent representations to him. (*Adams* v. *Harrison,* 34 Cal.App.2d 288, 299-300 [93 P.2d 237] ; see also recent cases which allowed full recovery of secret profits without discussing section 3343: *Kinert* v. *Wright,* 81 Cal.App.2d 919 [185 P.2d 364] ; *Thompson* v. *Stoakes,* 46 Cal.App.2d 285 [115 P.2d 830] ; *Schwarting* v. *Artel,* 40 Cal.App.2d 433 [105 P.2d 380].)"

In *Anderson* v. *Thacher,* 76 Cal.App.2d 50, 65 [172 P.2d 533], this court stated: "An agency may be created not only by written instrument or by word of mouth but may be implied from the conduct of the parties (*Brand* v. *Mantor,* 6 Cal.App.2d 126, 130 [44 P.2d 390])."

The evidence hereinbefore recited not only established the

existence of agency, but it also tended to prove the concealment of facts vital to the plaintiffs with resultant profit to defendants.

In the circumstances presented by the record, the trial court very properly instructed the jury on the issues of agency, fiduciary relationship and the right of plaintiffs to recover secret profits. The refusal of the court to give certain instructions requested by defendants, and its modification of certain instructions given did not result in prejudice to defendants.

For the reasons stated, the judgment is affirmed.

Doran, Acting P. J., concurred.

White, P. J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied July 14, 1952, and appellants' petition for a hearing by the Supreme Court was denied August 14, 1952.