[No. G031597. Fourth Dist., Div. Three. Mar. 24, 2004.]

SENECA INSURANCE COMPANY, Plaintiff and Appellant, v. COUNTY OF ORANGE, Defendant and Respondent.

612

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Plaintiff and Appellant.

Benjamin P. de Mayo, County Counsel, and Wendy J. Phillips, Deputy County Counsel, for Defendant and Respondent.

OPINION

MOORE, J.—The Honorable Gregg L. Prickett granted a second extension of time for a defendant to appear after issuance of a bail bond. The extension was given to a police detective in a chambers conference without notification to the parties or attorneys. Afterwards, the court entered summary judgment against the surety.

The surety unsuccessfully argued the court lacked jurisdiction to enter summary judgment because the second extension was not granted at its request. The Honorable Ronald P. Kreber denied a motion to vacate the forfeiture and set aside the judgment, finding the request for the second extension was made at the urging of a subagent or agent of the surety.

We conclude there is no substantial evidence that any agent of the surety, acting within the course and scope of that agency, requested the extension. Therefore, because the statutory period to enter summary judgment had expired, the trial court was without jurisdiction to enter summary judgment against the surety. We reverse and remand.

I

FACTS

On February 23, 2001, Seneca Insurance Company, Inc. presented a bond in the amount of $200,000 for defendant German Cesar Lema. Seneca admitted to the bail amount of $200,000 and undertook that the defendant would appear in Department N-12 of the North Justice Center on March 16, 2001. On February 24, 2001, a bond receipt for $200,000 was issued to Seneca Insurance Co. by the cashier for the sheriff-coroner of the Orange County jail for Lema.

The court's minute order of March 16, 2001, reflects that defendant failed to appear. In open court, the court ordered the bail bond forfeited. On March 21, 2001, the clerk of the court mailed a notice of forfeiture to both Seneca and the bail agents.

On September 12, 2001, summary judgment was "signed and filed." A hearing was held on October 11, 2001, on Seneca's motion to extend time on the bond forfeiture pursuant to Penal Code section 1305.4. (Unless otherwise indicated, all statutory references are to the Penal Code.) The motion was granted. The court ordered the summary judgment on the forfeited bail bond set aside and vacated. The court further ordered the 180-day bail bond forfeiture period be extended to March 21, 2002. On March 19, 2002, the court ordered the 180-day forfeiture period extended until June 17, 2002.

On June 18, 2002, the superior court notified Seneca and its bail agents the statutory time since the bond was forfeited by the court had passed and that no motion was made to set aside the forfeiture within the period provided by section 1305. On July 1, 2002, summary judgment against Seneca was ordered in the amount of $200,000. Notice of entry of judgment was mailed by certified mail to Seneca and its bail agents the next day.

Seneca filed a notice of motion and motion to set aside summary judgment, discharge forfeiture and exonerate bail on July 31, 2002. Seneca argued that neither it nor its agents requested the extension and the statutory period in which to enter summary judgment had expired. Attached to the motion was the declaration of bail agent Stu Goldberg stating, "I did not file, request, or authorize a motion to further extend time on March 19, 2002. I have been informed that an Orange County detective made this request to Judge Prickett on behalf of Thomas Walker, the indemnitor on bond number S999-0029373, posted in this case." The declaration of Seneca's bail bonds manager, Margaret Lineman, was also presented with the motion. Lineman stated, "No motion was requested, authorized or filed by or on behalf of Seneca Insurance Company, Inc. to further extend time on bond number S999-00249373 after the extension that was granted on October 11, 2001."

The County of Orange opposed the July 31, 2002 motion. Attached to its opposition was the declaration of Huntington Beach Detective Neil Spector. Spector said he was the lead investigator in the case involving defendant Lema. He said he was contacted in the early spring of 2001 by bail investigators Ray Hawkins and Jerry Anderson. The two were known to Spector as persons with whom the police shared information in trying to locate suspects, including Lema. According to Spector, "In early to mid-March, 2002, sometime prior to the expiration of the extension of time, Hawkins and Anderson approached me and requested that I seek an extension from the Court on the bail forfeiture. They cited some sections of the Penal Code, and/or other codes, and told me that they could not seek the extension, but that I could, and asked me to do so. I am not familiar with the sections of the Penal Code specifically relating to forfeited bail. My main focus was to apprehend Defendant. Hawkins and Anderson led me to believe that the only

way they could continue searching for Defendant and achieve ultimate apprehension was if the Court granted an extension on the forfeited bail. [¶] I had no reason to not believe Anderson and Hawkins, so I agreed to approach the assigned judge on the case. On or about March 19, 2002, I went to Judge Prickett's court in Fullerton. I had a brief conversation with Judge Prickett in chambers. I advised Judge Prickett of our efforts to locate Defendant and that I was informed and believed that an extension of time on the forfeited bail would help in bringing Defendant before the court. Judge Prickett agreed to a three-month extension of time to June 17, 2002."

Anderson is a bounty hunter. From time to time, he works for Seneca's bail agent, Stu Goldberg, in locating and apprehending fugitives. For his efforts, Anderson receives 10 percent of the face value of the bond as a recovery fee if he is able to apprehend a defendant and obtain exoneration of bail. He stated that on March 5, 2002, he informed Spector that he and Ray Hawkins would no longer be able to assist in locating Lema since the bail agent was only entitled to a 180-day extension and were not allowed to seek additional time.

Thomas Walker's house, valued at $325,000, was used as collateral for Lema's bail bond. On February 4, 2001, Walker signed a deed of trust securing Lema's release. According to Walker, he met with Spector on March 15, 2002. "I offered to help Detective Spector if he could try to get more time for the bounty hunters, so that I would not lose my house."

On November 7, 2002, Judge Ronald P. Kreber denied the motion to vacate forfeiture and reinstate bail. On December 5, 2002, Judge Kreber denied the motion to vacate the summary judgment. The court stated, "Well, I find that Detective Spector made an extension request at the urging of a sub-agent or agent of a surety. [¶] What other explanation would one have, or motive would the detective have? Because he certainly was not going to gain financially from it. [¶] Certainly under the interests of justice he would be prevailing, in the detective's mind, I suppose, but I think the surety ought to be held responsible for the actions of its agents or sub-agents. And I think this inappropriate behavior would just be encouraged if the surety was not held to be liable in this type of situation." On December 18, 2002, Seneca filed a notice of appeal from the orders of November 7, 2002, and December 5, 2002.

## II

## DISCUSSION

" 'The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections 1305 and 1306

dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.' " (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263].)

█ Appellant's argument is based upon section 1306, subdivision (c). This section states that if, because of the court's failure to promptly perform the duties under section 1306, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated. Seneca thus argues: The court granted an extension of time on October 11, 2001, until March 21, 2002, so the last day the court had jurisdiction to enter summary judgment was on June 19, 2002. Therefore, the summary judgment ordered by the court on July 1, 2002, was void. Appellant's position hinges on the inappropriateness of the March 19, 2002 request for extension of time. According to appellant, neither the surety nor its agent sought the extension and it was, therefore, improper, and summary judgment was not entered until after the statutory deadline.

█ Section 1305.4 authorizes a surety, insurer, a bail agent or the depositor of money to file a motion for an order extending the 180-day period after bail is forfeited. "The motion shall include a declaration or affidavit that states the reasons showing good cause to extend that period." (Pen. Code, § 1305.4.)

In the instant case, there was no motion filed. There was no declaration or affidavit stating any reasons why the period should be extended. Instead, Judge Gregg L. Prickett met with a police detective in chambers. From the record submitted on appeal, it appears the judge met ex parte without giving notice to any of the parties to the underlying action or Seneca or its agents or attorneys. Even respondent concedes the March 19, 2002 extension was not properly obtained under section 1305.4. Respondent's position is that since Seneca's agents requested the second extension, Seneca should be estopped from claiming the summary judgment was void.

In support of its argument, respondent cites *County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10 [82 Cal.Rptr.2d 214]. A party who seeks or consents to an action beyond the court's power can be estopped from complaining about the ensuing action in excess of jurisdiction. In *Ranger*, the bail agent came to the trial court, "with its hat in hand, seeking and receiving a favor—the tolling of the statutory time period in which to have the forfeiture on its bond vacated." On appeal, the surety contended the trial court was without authority to toll the period. The appellate court said it would not permit the insurance company to trifle with the court and estopped it from claiming lack of jurisdiction. (*Id.* at pp. 18–19.)

Respondent also relies upon the holding in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120 [97 Cal.Rptr.2d 858]. In that case, the order extending the initial statutory period after bail was forfeited was not made until after the period had elapsed. The surety, however, had stipulated not to bring any action that directly or collaterally attacked any tolling order entered in the case. The appellate court noted there is a distinction between a lack of jurisdiction over the cause and an act in excess of jurisdiction. The court concluded that although the trial court acted in excess of its jurisdiction, the surety was estopped from challenging the orders. (*Id.* at pp. 125–127.)

Another case cited by respondent is *People v. Frontier Pacific Ins. Co.* (2000) 83 Cal.App.4th 1289 [100 Cal.Rptr.2d 433], involving a surety that effectively agreed to a tolling of the period outside the extended 180 days and then complained that the trial judge did so. The appellate court said, "In circumstances such as these, Frontier, having received the benefit of additional time, is estopped from arguing that the trial court lacked jurisdiction to enter the order extending time." (*Id.* at p. 1294.)

■ The cases respondent cites make it clear that the doctrine of estoppel can be used against a surety for the actions of its agents. Respondent points out it was within the bounds of reason for the court to give more weight to the declaration of Spector since the detective was not biased. We will not comment on whether or not Spector was biased. Suffice it to say, substantial evidence supports the trial court's conclusion that Spector's declaration was believable and that the detective made the request for extension at the request of the bounty hunters.

■ The question of whether an agent acted on behalf of a principal is a question of fact, and on appeal, we review the trial court's decision to determine whether there is substantial evidence, uncontradicted or contradicted, to support it. (*Ramey v. Myers* (1958) 159 Cal.App.2d 82, 88 [323 P.2d 805]; *People v. Martin* (1957) 153 Cal.App.2d 275, 282 [314 P.2d 493].) The trial court found: "Well, I find that Detective Spector made an extension request at the urging of a sub-agent or agent of a surety." Whether or not the bounty hunters or the indemnitor qualify as agents or subagents of either Seneca or the bail agents are questions of fact. Respondent asserts Anderson and Hawkins were motivated to ask Spector to obtain a second extension because, if they were successful in returning Lema, they stood to recover $20,000.

After receiving notice of forfeiture, Goldberg contacted Anderson and agreed to pay him 10 percent of the face value of the bond as a recovery fee if Lema was apprehended. Anderson worked with another bounty hunter,

Hawkins, as well as indemnitor Walker. After subtracting the $60,000 mortgage from the value of Walker's home, there was $265,000 equity in the property, so Goldberg's losses were covered whether or not Lema was ever apprehended. According to Goldberg, he retained Anderson in order to fulfill his fiduciary duty to Walker. But Goldberg said he did not file, request or authorize a motion to extend time. Further, Goldberg declared he never discussed having Spector or any other individual request time beyond the original 180-day extension from the court. He claimed not to be aware of any attempts to obtain additional time until Hawkins called him after the court granted an additional 90-day extension.

■ "An agent represents the principal for all purposes within the scope of actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." (Civ. Code, § 2330.) An agent, unless specifically forbidden by his or her principal to do so, may delegate his or her powers to another person when the act done is purely mechanical, when the act is one the agent cannot but a subagent can lawfully perform, when it is the usage of the place to delegate such powers, or when such delegation is specially authorized by the principal. (Civ. Code, § 2349.)

Anderson was clearly an agent of Goldberg. But the extent of his agency is disputed by the parties. Respondent argues that Seneca benefited from the second extension and contends a principal cannot benefit from the fraud of its agent who is acting in the course and scope of his or her agency. We do not know what was said in chambers before Judge Prickett or why the judge did not follow the procedural requirements of section 1305.4 in conducting whatever occurred in chambers. There is no indication why the attorneys in the case were not notified of the chambers proceedings. We have in the past pointed out that numerous problems result when judges "disappear" into unreported chambers conferences. (See *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 319–320 [96 Cal.Rptr.2d 772]; *Heenan v. Sobati* (2002) 96 Cal.App.4th 995, 1002 [117 Cal.Rptr.2d 532].)

■ Whatever may have been the full scope of Anderson's authority as Seneca's agent, the evidence before the court makes clear he could not lawfully delegate authority to Spector to seek the second extension from the court. Spector's request that the court order the second extension was not a "purely mechanical" act. (Civ. Code, § 2349, subd. (1).) Nor was it an act he lawfully could perform as a subagent. (Civ. Code, § 2349, subd. (2).) Section

1305.4 authorizes only a single 180-day extension. Further, there is no evidence that it is "the usage of the place to delegate such powers." (Civ. Code, § 2349, subd. (3).) And we are loath to presume it is routine to request an unlawful extension. Finally, there is no evidence that Seneca, as principal, and as distinguished from Anderson, as agent, "specially authorized" the delegation to Spector. (Civ. Code, § 2349, subd. (4).)

■ A third party, in this case the court itself, "who deals with an agent and knows of the agency is under a duty to ascertain its scope. Hence, if the agent acts beyond his actual authority, *and the conduct of the principal has not been such as to give him ostensible authority*, the principal cannot be held." (2 Witkin, Summary of Cal. Law (9th ed. 1987), Agency and Employment, § 78, p. 80.) "It is elementary that there are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence." (*Hill v. Citizens Nat. Trust & Sav. Bk.* (1937) 9 Cal.2d. 172, 176 [69 P.2d 853].) Here, the court ordered an extension in excess of its jurisdiction to do so, at the request of a police officer not appointed an agent of Seneca, and who could not have been delegated any lawful authority by Seneca's agents to make the subject request. The ex parte order made without notice to the People or to Seneca, at the request of Spector, who was a stranger to the proceeding, cannot be binding on Seneca. While we sympathize with the demands on a busy trial judge who is asked to make an order that appears harmless, there is, after all, a statutory procedure to request an extension, and it was not followed. We cannot charge that error to Seneca.

■ In sum, there is no evidence presented in the record before us that Anderson's agency relationship with Goldberg explicitly or impliedly included seeking an extension of time from the court. Nor is there any evidence that Anderson, Hawkins, Walker or Spector had ostensible or apparent authority to request an extension on behalf of the surety or the bail agent. Despite the argument that Seneca and the bail agent might have benefited from the second extension of time, the record lacks any substantial evidence to support the court's conclusion the extension was sought at the behest of the surety. This summary judgment was entered after the statutory period had expired, and was therefore invalid.

III

## DISPOSITION

The judgment is reversed and remanded for the trial court to order the bail exonerated. Appellant is awarded costs on appeal.

Sills, P. J., and Ikola, J., concurred.