Filed 2/2/23  Kourtakis v. Capistrano Beach Care Center CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LUCILLE KOURTAKIS et al., | |
| Plaintiffs and Respondents, | G060922 |
| v. | (Super. Ct. No. 30-2021-01205006) |
| CAPISTRANO BEACH CARE CENTER, LLC, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, James L. Crandall, Judge.  Affirmed in part and remanded in part with instructions.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Suzanne L. Schmidt, Kathleen M. Walker, Jeffrey S. Healey and Tracy Forbath, for Defendants and Appellants.

Law Offices of Felicia C. Curran and Felicia C. Curran for Plaintiffs and Respondents.

## INTRODUCTION

This is an appeal from an order denying the petition of appellants Capistrano Beach Care Center, LLC, and Cambridge Healthcare Services, LLC (collectively Capistrano), to compel respondent Pamela Kourtakis to arbitrate claims against it on behalf of Lucille Kourtakis (Lucy) – Pamela's mother – and herself. Lucy died in July 2020, after staying approximately seven months in Capistrano's rehabilitation facility. Pamela sued for elder abuse and violation of Health and Safety Code section 1430, the Patient's Bill of Rights, as Lucy's successor in interest. Pamela sued on her own behalf for wrongful death and negligent infliction of emotional distress.

Capistrano petitioned to compel arbitration under an agreement Pamela admitted to signing. The trial court denied the petition on two grounds. First, Capistrano presented no evidence that Pamela was authorized to sign on Lucy's behalf. Second, the court exercised its discretion to deny the entire petition on the ground of possible inconsistent rulings.

We affirm the portion of the order denying the petition with respect to Lucy's claims. Capistrano submitted no evidence to establish Pamela's authority to bind Lucy to arbitrate her claims. With respect to Pamela's own claims, however, we remand the matter to the trial court to decide whether these claims must be arbitrated. The court did not reach this issue, and therefore whether it could exercise its discretion to deny the petition cannot be determined on this record.

## FACTS

Pamela's complaint alleged that Lucy was admitted to Capistrano for rehabilitation in December 2019 after being treated in a hospital for a broken shoulder suffered in a fall. At the time, she was 88 years old and had early-stage dementia. While she was living at Capistrano, a period of approximately seven months, her condition

2

deteriorated and her weight dropped from 112 pounds to 92 pounds.[1]  When she began choking and gasping for air during a visit with Pamela, Pamela overrode the assurances of the Capistrano staff that her mother was "fine" and "normal" and rushed her to the hospital.  Upon being admitted to the hospital in early July 2020, Lucy was diagnosed as being in respiratory and cardiac distress, severely malnourished, and suffering from a urinary tract infection.  Despite being placed on oxygen and intubated, Lucy died on July 22, 2020.

Pamela sued Capistrano on Lucy's behalf (for elder abuse and violation of Health and Safety Code section 1430) and on her own behalf (for wrongful death and emotional distress).  Capistrano responded with a petition to compel arbitration.

The arbitration agreement, attached to the petition, was a two-page document.[2]  There is a line for the "resident's name" at the top of the first page, which in the exhibit in the record is blank.  Likewise, spaces for "initials" at the bottom of the first page are blank.  The second page includes two notices in bold type and red ink stating in essence that the signatory agrees to arbitrate, first, medical malpractice claims and, second, any other claims against Capistrano.  The signature lines for both notices state that the signatory is signing "on behalf of the Resident and as an individual."  Pamela's signature appears on both lines.

In her opposing declaration, Pamela admitted signing the arbitration agreement, among other papers, at the behest of "Carlos," who told her she was signing admitting paperwork.  He did not give her an opportunity to read the papers, tell her that she did not need to sign them, or give her a copy of the arbitration agreement.  She stated that she thought she had to sign the papers to obtain treatment for her mother and that she

---

[1]  Lucy allegedly needed assistance in feeding herself, assistance that Capistrano recognized but failed to provide.

[2]  This is the document in the record.  Pamela's and her counsel's declarations allude to a "three judge panel" of arbitrators and "rules and regulations regarding arbitration," suggesting that there are other terms to be found somewhere else.

believed her mother would have to leave if Pamela did not sign. She also stated that her mother was not present during this encounter with Carlos.

The trial court denied Capistrano's petition to compel arbitration on two grounds. First, Capistrano had not produced evidence that Pamela was authorized to bind Lucy to arbitrate. There was no power of attorney or evidence of consent on Lucy's part to have Pamela sign for her. Accordingly, arbitration of Lucy's claims against Capistrano (elder abuse, etc.) could not be compelled.

That being the case, the court exercised its discretion under Code of Civil Procedure section 1281.2, subdivision (c), to deny the petition.[3] While Pamela could possibly be compelled to arbitrate her own claims for wrongful death and emotional distress (an issue the trial court did not reach), Lucy's court case and Pamela's arbitration could reach inconsistent conclusions.

## DISCUSSION

This appeal presents us with two issues. First, was Pamela authorized to bind Lucy to arbitrate her claims against Capistrano? Second, could the trial court exercise its discretion under section 1281.2, subdivision (c), to deny the petition to compel arbitration?

**I.        Agency**

Whether an agent had authority to act for a principal is a question of fact, reviewable for substantial evidence. (*Seneca Ins. Co. v. County of Orange* (2004) 117 Cal.App.4th 611, 618.) Agency can be either actual or ostensible. (Civ. Code, § 2298.)

The court found that Capistrano did not produce evidence of Pamela's actual authority to enter into an arbitration agreement for Lucy. There was no power of attorney. There was no evidence that Lucy instructed Pamela to enter into the agreement or consented to waive her right to a jury trial. Lucy's name did not even appear on the

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

arbitration agreement. Capistrano also failed to present evidence of any act by Lucy that would have given Pamela ostensible authority to act on her behalf.

On appeal, Capistrano argues that Pamela had both actual and ostensible authority to bind Lucy to arbitrate. It observes that agency need not be express, but can be established by conduct and then refers to allegations of the complaint as evidence of Pamela's "frequent instruct[ions] to nurses and other staff on how to care for [Lucy]." These instructions consisted of inquiries about Lucy's persistent weight loss, efforts to take Lucy to a podiatrist to cut her overgrown toe nails (which were impeding her ability to walk), a query to the staff about an eye problem, and Pamela's insistence on taking her mother to the hospital when she began to choke and gasp for air.

The sole declaration Capistrano submitted was one by its counsel attaching the agreement as an exhibit. Capistrano submitted no declarations establishing actual agency, even after being challenged on this issue in Pamela's opposition. There was, for example, no declaration from the man identified in Pamela's declaration as "Carlos" about the circumstances of Pamela's signing the agreement. The "evidence" to which Capistrano refers on appeal consists of allegations from the complaint.

"[P]leadings are allegations, not evidence[.]" (*Soderstedt v. CBIZ Southern California*, *LLC* (2011) 197 Cal.App.4th 133, 154.) Other than the agreement itself, Capistrano submitted nothing to show Pamela had Lucy's authority to enter into an arbitration agreement for her. As the court stated, "[Pamela] would have needed the authority to enter into the agreement at all. Here, [it] does not appear that [Pamela] had the authority, consent, or was given instruction to sign the agreement on her mother's behalf." Capistrano submitted no contrary evidence.

As for ostensible agency, this kind of agency can be created only by an act of the principal.[4] (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581,

---

[4]     Civil Code section 2300 provides, "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

587-588.)  Capistrano argues that Lucy's "passive acceptance of Pamela's active involvement in [Lucy's] affairs," along with Lucy's "failure to limit her daughter's authority," created an ostensible agency, again citing to allegations in the complaint.

Once again, the record contains no evidence submitted by Capistrano to support an act by Lucy establishing Pamela's ostensible authority.  For example, there are no declarations from staff members asserting that Lucy's "passive acceptance" or her "failure to limit" Pamela's supposed authority led them to believe that Pamela was Lucy's agent.

Capistrano had the burden of establishing the existence of a valid agreement to arbitrate Lucy's claims.  (See *Juen v. Alain Pinel Realtors, Inc*. (2019) 32 Cal.App.5th 972, 978.)  In this case, it had to present evidence that Pamela possessed the necessary authority to bind Lucy.  Because the trial court determined that Capistrano failed to meet this burden, it must show on appeal that its evidence was "'''(1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'''' [Citations.]"  (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769.)  As Capistrano submitted almost no evidence at all, we cannot find its evidence was "uncontradicted and unimpeached."

Capistrano also argues Lucy ratified Pamela's conduct by failing to rescind the arbitration agreement and by staying at its facility.  There is no evidence in the record that Lucy knew about the arbitration agreement, and the document expressly stated that agreeing to arbitrate was not a condition of receiving care.  Lucy could not ratify an agreement about which she knew nothing.  (See *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1090; *Chastain v. Belmont* (1954) 43 Cal.2d 45, 58.)  In addition, ratification was not raised as an issue in the trial court and may not be raised here for the first time.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

6

The trial court correctly ruled that Capistrano had failed to carry its burden to show a valid agreement to arbitrate Lucy's causes of action for elder abuse and violation of Health and Safety Code section 1430.

**II.**        **Application of Section 1281.2, subdivision (c)**

Section 1281.2, subdivision (c), provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] . . . A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition. This subdivision shall not be applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295."[5]

The trial court in this case invoked this code section to deny the petition to compel arbitration "to avoid inconsistent rulings of the elder abuse and wrongful death causes of action." We would review the court's decision on the issue of avoiding inconsistent rulings for abuse of discretion. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 840.)

---

[5]        Capistrano argues that this last sentence precludes the application of section 1281.2, subdivision (c), to the agreement at issue. This is wrong. Lucy's and Pamela's claims do not sound in professional negligence of a health care provider. They are brought, first, under Welfare and Institutions Code section 15610.57, specifically failure to assist in personal hygiene or in the provision of food, failure to provide medical care (when Lucy was choking), and failure to prevent malnutrition, and, second, for wrongful death resulting from these failures. Section 1295 does not apply.

7

There is no question that conflicting rulings on a common issue of law or fact would be possible if Lucy's elder abuse claims went to trial and Pamela's wrongful death and emotional distress claims were arbitrated. The issue before us, however, is whether the court could apply section 1281.2, subdivision (c), in this case. This is an issue of law. (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 848.)

The arbitration agreement includes three provisions about governing law. First, it provides that California substantive law applies "to any and all claims arising out of the care, treatment and services provided to the Resident by [Capistrano]."[6] Second, it expressly excludes the application of section 1281.2, subdivision (c), on the ground that "[t]he parties do not want any claims not subject to arbitration to impede any and all other claims from being ordered to binding arbitration." Finally, the agreement provides, "[T]his Agreement is to be governed by the Federal Arbitration Act[,] and the procedural rules set forth in the Federal Arbitration Act (9 U.S.C. Sections 1-16) shall govern any petition to compel arbitration and the selection of an arbitrator . . . ."

Invoking California substantive law defeats Capistrano's argument that the arbitration agreement explicitly precluded the court from applying section 1281.2, subdivision (c). Civil Code section 3513 provides, "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Section 1281.2, subdivision (c), is clearly a law established for a public reason, i.e., to avoid the confusion and waste of judicial resources that would result from conflicting rulings on common issues of law or facts. (See *Volt Information Sciences v. Board of Trustees* (1989) 489 U.S. 468, 476, fn.5.) Thus the only remaining issue to be resolved is whether the procedural rules of the Federal Arbitration

---

[6] This provision appears to be designed to permit Capistrano to benefit from section 667.7, which permits awards in medical malpractice actions to be paid in periodic payments rather than in a lump sum, and from MICRA, Civil Code sections 3333.1 et seq.

8

Act (FAA), 9 United States Code sections 1 through 16, apply to Pamela's claims instead of the procedural rules governing arbitration in the California Code of Civil Procedure.

Unlike the Code of Civil Procedure, the FAA does not include a provision allowing a court to deny a petition to compel arbitration on the ground of possible conflicting rulings. On the contrary, 9 United States Code section 3 requires the trial court to stay the court action until the arbitration is completed.

Whether the FAA rules apply to Pamela's causes of action against Capistrano – and therefore preclude the court from denying the petition pursuant to section 1281.2, subdivision (c) – depends on whether there is an enforceable agreement between Capistrano and Pamela to arbitrate her own claims. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394.) The court did not reach this issue. We therefore return the matter to the trial court to make this determination.[7]

## DISPOSITION

The matter is remanded to the trial court to determine whether respondent Pamela Kourtakis' claims against appellants are arbitrable. In all other respects, the order denying appellant's petition to compel arbitration is affirmed. The parties are to bear their own costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.

---

[7] The court did not address whether the arbitration agreement was unconscionable, and that issue is therefore not before us at this time.

9